MAUSKOPF, J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

NATIONAL LABOR RELATIONS BOARD,

                Applicant,

                    v.

EXPERT ELECTRIC, INC.

                Respondent.

MISC 10 -0645

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

No.

SEP 20 2010

BROOKLYN OFFICE

## APPLICATION OF THE NATIONAL LABOR RELATIONS BOARD FOR SUMMARY ORDER REQUIRING OBEDIENCE WITH INVESTIGATIVE SUBPOENA

The National Labor Relations Board (the "Board"), an administrative agency of the United States Government, respectfully applies to this Court, pursuant to Section 11(2) of the National Labor Relations Act (29 U.S.C. §161(2)) ("the Act"), for an order requiring obedience with an investigative subpoena issued to Respondent Expert Electric, Inc. ("Respondent" or "Expert") and duly served on Respondent in the manner provided by law. Specifically, although John Micelotta (Expert's president and sole owner) appeared for a deposition, he repeatedly refused to answer relevant questions while erroneously asserting the attorney-client privilege. In support of its application, upon information and belief, the Board shows as follows:

    1.      The Board is an administrative agency of the United States Government created by the Act, and empowered to administer the provisions of the Act, including the issuance of subpoenas in furtherance of its investigation of matters within its jurisdiction.

    2.      Expert, a corporation with offices in Nassau County and Queens County, within this judicial district, is engaged in the business of providing electrical contracting services.

3.     This Court has jurisdiction of the subject matter of this proceeding and of Respondent by virtue of Section 11(2) of the Act.[1]

4.     At all times material hereto, Expert has been represented by United Electrical Contractors Association (herein called "UECA"), an organization of electrical contractors, for the purposes of collective bargaining with Local 3, International Brotherhood of Electrical Workers, AFL-CIO (the "Union").[2]  Consequently, Expert will be bound to the result of ongoing contract negotiations between UECA and the Union.

5.     On May 15, 2006, the Board issued two related Decisions and Orders (reported at 347 NLRB 1 and 347 NLRB 18).  In the first Order, the Board found that UECA and some of its individual employer-members, including Expert, failed to provide, and/or delayed in providing, relevant and necessary information to the Union.  The Board ordered UECA and Expert to provide the Union with the requested information and to cease and desist from committing unfair labor practices in any like or related manner.  In the second Order, the Board found that UECA and Expert refused to bargain with the Union.  The Board ordered UECA to recognize and resume bargaining with the Union, on behalf of the individual employer-members of UECA and any former

---

[1] Section 11(2) of the Act states, in pertinent part:

In case of contumacy or refusal to obey a subpoena issued to any person, any district court of the United States … within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered …

[2] On September 2,1994, the United States Court of Appeals for the Second Circuit enforced the Board's Decision and Order (reported at 312 NLRB 1118) finding that the Union is the exclusive collective bargaining representative of certain employees employed by employer-members of UECA, including Expert (unreported Judgment, Case Nos. 93-4269 and 94-4011).

employer-members that caused their own expulsion from UECA, and to utilize all powers UECA possessed by virtue of its relationship with its employer-members to ensure their cooperation in the effectuation of the objective of the Board's Order. The Board also ordered Expert to recognize the Union and bargain with the Union through UECA, as its representative.[3]

6.      On November 27, 2007, the United States Court of Appeals for the District of Columbia Circuit ("DC Circuit") enforced the Board's May 15, 2006 Orders (unreported Judgments, Case Nos. 06-1180 and 06-1198) [Copies of the Judgments are attached as Exhibit A].

7.      It has been reported to the Board's Region 29 Office in Brooklyn, New York, and to the Board's Contempt Litigation and Compliance Branch ("Contempt Branch") that following entry of the Judgments, UECA and Expert have failed to furnish information as required by the Board's Court-enforced orders, including a list of all current and former employees and information relating to fringe benefit plans and contributions from contractors within the multiemployer bargaining unit represented by UECA.

8.      On June 24, 2010, the Contempt Branch issued a subpoena pursuant to Section 11 of the Act (Subpoena #A-851506) [Exhibit B] requiring Expert to designate a representative to appear for deposition, in furtherance of its investigation into whether

---

[3] The Board found that "Expert, having caused its own expulsion from UECA, remains obligated, notwithstanding its loss of membership in UECA, to bargain with the Union on a multiemployer basis and is required by the Order herein to bargain on that basis." 347 NLRB at 18, n.2.

Expert and UECA had complied with the DC Circuit's Judgments.[4]  The subpoena was served on Expert via Federal Express.  A courtesy copy was also sent to Expert's counsel.

9.      The Board's subpoena [Exhibit B] explicitly noted that it sought  testimony regarding (1) requests for information made to Expert, either directly by the Union or through UECA; (2) Expert's response to those requests; (3) the reasons behind Expert's response or lack of response; and (4) Expert's efforts to comply.  This information is directly relevant to, and will assist the Board in determining, whether UECA and Expert have complied with provisions of the DC Circuit's Judgments requiring, among other things, that they produce certain requested information to the Union, and whether UECA has utilized all its powers to ensure its employer-members' cooperation in that effort.

10.      On August 3, 2010, John Micelotta (President and sole-owner of Expert Electric, Inc.) appeared for deposition as a representative of Expert, and was represented by counsel.

11.      During this deposition, Mr. Micelotta was asked a number of questions relating to his knowledge or "awareness" of the Board's investigation into Expert's compliance with DC Circuit Court Judgment Nos. 06-1180 and 06-1198, as well as Expert's actual compliance with the Judgment.  [See, for example, Exhibit C (Micelotta Dep.), pp. 10-13, 18-21].[5]

---

[4] The Second Circuit's September 2, 1994, Judgment is also implicated to the extent that UECA's actions may constitute a refusal to bargain with the Union.

[5] Copies of pages cited to herein, from the transcript of Mr. Micelotta's August 3, 2010 deposition are attached as Exhibit C.

12. Mr. Micelotta's counsel asserted repeated objections to the Board's questions and instructed his client not to answer several of the Board's questions based upon an alleged "attorney-client privilege". [Exhibit C, pp. 10-13, 18-21, 22, 41-55].

13. For example, Mr. Micelotta's counsel would not allow Mr. Micelotta to answer questions about Mr. Micelotta's knowledge of Board litigation involving Expert:

> **Q [MS. LERNER (on behalf of the Board)]:** *Okay. As far as you can remember and as far as you know if Mr. Frank by the firm that he's employed by - -*
>
> **A:** *Uh huh.*
>
> **Q:** *- if he received a letter related to negotiations or to litigation, NLRB limitation [sic] that your company is involved with would he, would it be common for him to send you a copy of the letter he received?*
>
> **MR. FRANK [counsel for Expert/John Micelotta]:** *Don't answer. Objection, you're asking for attorney/client communications, that's privileged.*
>
> **BY MS. LERNER:**
>
> **Q:** *I'm just asking if he received a letter would he send you a copy?*
>
> **MR. FRANK:** *Objection. Do not answer the question.*
>
> **MS. LERNER:** *Why is that - -*
>
> **MR. FRANK:** *It's attorney/client privilege.*
>
> **MS. LERNER:** *Why is that - -*

> **MR. FRANK**: *Communications between attorney and client.*
>
> **MS. LERNER**: *To send him a copy of a letter?*
>
> **MR. FRANK**: *You are asking about attorney/client communications.*

[Exhibit C, pp. 11-12].

14.    Ms. Lerner warned counsel that she would seek sanctions if Mr. Micelotta refused to answer her questions:

> **MS. LERNER**: *Okay. I'm going to tell you if I have to go to court and get these answers and get the subpoena enforced in court so that I can get answers to certain questions that Mr. Frank is instructing you not to answer because I don't think there is a privilege.*
>
> *I'm just stating this on the record, I'm going to seek attorney fees and costs in my having to come back, in my preparing my application to enforce the subpoena, and if I have to come back and get these questions answered, I'm going to ask for costs and attorney fees. I just want you to understand that, okay. I'm not asking for anything that he might have said to you.*

> *I'm just asking if you received a letter in the mail that concerned your company and the Labor Board or the Union whether or not you received a copy of that letter from him* [Mr. Frank], *okay.*
>
> **MR. FRANK**:   *You're asking for communications between an attorney and client.*

[Exhibit C, pp. 12-13].

15.    Despite Ms. Lerner's warning that the Board would seek costs and attorney fees if it had to file an application to enforce the subpoena, Mr. Frank asserted attorney-client privilege in similar contexts throughout the remainder of the deposition:

> **Q [MS. LERNER]**: *Did you ever come to learn that my office, the Contempt Branch of the Labor Board was investigating whether or not Expert Electric had complied with the D.C. Circuit's judgement?*
>
> **MR. FRANK**: *Objection.  Do not answer based on anything you learned between communications with you and your attorneys.  I assume you're not asking for communications and knowledge gained from conversations with counsel?*
>
> **MS. LERNER**: *I think I can ask - -*
>
> **MR. FRANK**: *Is that correct?*
>
> **MS. LERNER**:  *- -  him did he ever come to an understanding.*

7

**MR. FRANK**: *No.*

**MS. LERNER**: *I'm not asking about what communications were.*

**MR. FRANK**: *You can't ask him about information he learned from his attorneys or communications he had with his attorneys, that's attorney/client privilege.*

[Exhibit C, pp. 18-19].

16.    In another instance, the deposition transcript reflects the following exchange:

**Q [MS. LERNER]**: *You are aware that my office is investigating whether or not your company has complied with the D.C. Circuit's judgement correct?*

**MR. FRANK**: *Same objection to the extent that you're asking for communications between him and counsel, those are objected to and privileged. If you're asking him the question of any independent knowledge he may have, I have no objection to that.*

**MS. LERNER**: *I'm asking him whether or not he is aware, that's my question, whether or not - -*

**MR. FRANK**: *Are you asking about - -*

**MS. LERNER**: *- - that he is aware - -*

**MR. FRANK**: - - *are you excluding information from counsel, or are you asking about information he learned from counsel?*

**MS. LERNER**: *He answered based on, well, my question is, and if you're instructing him not to answer that question, my question is is he aware that my office is investigating whether or not his company is complying or has complied with the D.C. Circuit Court's judgement? And I understand your objection,* <u>*again I have to state for the record if I have to file an application to enforce the subpoena to get these questions answered, I'm going to seek costs and attorneys fees in doing so.*</u>

[Exhibit C, pp. 19-20 (emphasis added)].

17.   Ms. Lerner attempted once again, to question the witness:

**MS. LERNER**: *I'm not asking about communications. I'm just asking whether or not he is aware that my office is investigating whether or not his company is complying with the D.C. Circuit Court's judgement, that's the question. And if you're instructing him not to answer, that's fine, let's move on.*

**MR. FRANK**: *I'm instructing him not to testify regarding communications with counsel.*

9

**MS. LERNER**: *I'm not asking him - -*

**MR. FRANK**: *If you can - -*

**MS. LERNER**: *- - about what counsel exactly said to him.*

**MR. FRANK**: *You're asking about information he learned from counsel, that's privileged.*

**MS. LERNER**: *I'm asking him whether or not he has an understanding or has had an understanding that my office was investigating - -*

**MR. FRANK**: *If you can answer that question not based on communications with counsel you may answer.*

**THE WITNESS**: *I can't.*

**MS. LERNER**: *Okay.*

[Exhibit C, p. 21].

18.    Mr. Micelotta also refused to answer the Board's questions pertaining to Expert's efforts to collect documents requested by the Contempt Branch, for its contempt investigation.  The deposition transcript reflects the following exchange:

> **Q [MS. LERNER]**: *Have you in the last or since October of 2009 have you participated in collecting documents to submit to my office regarding your company's compliance with the D.C. Circuit Court's judgement?*

**A [THE WITNESS]:** *No. Not that I recall, no.*

**Q:** *Take a look at Expert Exhibit Five and let's go, read each item.[6] You have not participated at all in looking for any documents that are listed on Items one, two, three or four of Exhibit Five?*

**MR. FRANK:** *Objection to form. And again we object to the extent you're asking for communications with counsel.*

**MS. LERNER:** *You can blanket every question I ask with an objection to the extent it asks for attorney/client communication.*

**BY MS. LERNER:**

**Q:** *But I'm asking you on Expert Exhibit Five read items one, two, three and four, and my question to you is did you ever participate in collecting or locating any documents that are listed in those four items?*

...

**MR. FRANK:** *I object to the question to the extent it's asking for communications with counsel and - -*

---

[6] Expert Exhibit Five [Exhibit D hereto] is a letter dated October 9, 2009, from the Board's Contempt Branch to Expert counsel, informing him of the initiation of the contempt investigation and requesting four (4) categories of documents containing information regarding Expert's compliance with DC Circuit Court Judgment Nos. 06-1180 and 06-1198.

> **MS. LERNER:** *You've said that many times. I didn't,*
> *my question has nothing to do with communications.*
> *I just asked whether - -*
>
> **MR. FRANK:** *Well, that - -*
>
> **MS. LERNER:** *- - he participated in collecting any*
> *documents that are listed - -*
>
> **MR. FRANK:** *But that includes - -*
>
> **MS. LERNER:** *- - in those four items.*
>
> **MR. FRANK:** *It includes communications with*
> *counsel and obtaining documents for counsel, that's*
> *the objection to the question.*

[Exhibit C, pp. 22-23].

19.    Furthermore, Mr. Micelotta refused to answer questions related to the Union's requests for information. The deposition transcript reflects the following exchange:

> **Q [MS. LERNER]:** *Were you ever aware that Local*
> *Three requested information from UECA with regard*
> *to its contractors in January of 2008?*
>
> **MR. FRANK:** *Again, are you inquiring about*
> *communications with counsel or are you excluding*
> *attorney/client communications?*
>
> **MS. LERNER:** *I'm asking about from any source*
> *whatsoever was he aware that - -*

12

**MR. FRANK:**  *But you're not to answer the question about communications that you had with your attorneys, so I would object to the question unless you want to clarify it to non-attorney/client communications.  Would you so clarify your request or, are you --*

**MS. LERNER:**  *Well, I'm not sure if the witness can answer that, because it say [sic] that he was cc'd with a copy of the January 26, 2008, Expert Eight, so I'm not sure if the witness in his own mind can differentiate and therein lies our problem.*[7]

**MR. FRANK:**  *Well, the witness can answer from his own knowledge if he has it other than communications from counsel.  My objection is limited to communications and information he received from counsel.*

**BY MS. LERNER:**

**Q:**  *Okay.  Two parts, eliminating your communications with counsel were you aware that in January of 2008 Local Three was requesting*

---

[7] Expert Eight [Exhibit E hereto] is a letter dated January 16, 2008, from the Union to UECA requesting information including (1) a list of all current and former employees, (2) a copy of remittance/contribution reports detailing contributions to fringe benefits funds, and (3) a copy of all fringe benefit plans from January 1, 2006.  The letter indicates that both Expert and its legal counsel, James Frank, Esq. were carbon copied.

*information from UECA concerning its contractors that it was representing?*

**A**: *Would you repeat that one more time?*

**Q**: *Not counting communications - -*

**A**: *It's hard to remember.*

**Q**: *I realize that, take your time. Not counting communications with counsel were you aware that in January of 2008 Local Three was requesting information from UECA concerning the contractors that the UECA was representing in negotiations?*

**A**: *I think so.*

**Q**: *Okay. How about Expert Exhibit Nine does this document look familiar to you?[8] You know what I'm going to give you Exhibit 10 as well because it's essentially almost the same thing.[9] Do you recognize either Exhibit 9 or 10?*

**A**: *Yes.*

**Q**: *You recognize which one?*

---

[8]Expert Exhibit Nine [Exhibit F hereto] is a letter dated March 3, 2008, from the Union to Expert's counsel, requesting formal recognition of the Union as the exclusive bargaining representative of the employees of UECA's employer members, requesting the resumption of collective bargaining, and enclosing a copy of its January 16, 2008 information request to UECA. The letter indicates that Expert was carbon copied.

[9] Exhibit 10 [Exhibit G hereto] is a letter dated March 3, 2008, from the Union to UECA requesting formal recognition of the Union as the exclusive bargaining representative of the employees of UECA's employer members, requesting the resumption of collective bargaining, and enclosing a copy of its January 16, 2008 information request. The letter indicates that Expert and James Frank, Esq. (Expert's counsel) were carbon copied.

**A**:  It looks familiar.  I can't say that I saw this exact letter but it looks familiar.

**Q**:  Exhibit 9 or 10?

**A**:  Nine.

**Q**:  Nine.  What about Exhibit 10?

**A**:  That's the same thing isn't it?

**Q**:  Yes, that's addressed to UECA instead of - -

**A**:  I couldn't tell you.

**MR. FRANK**:  I'm renewing my request to the extent you're asking for attorney/client communications.

**MS. LERNER**:  And I think he can answer whether or not he recognizes this document.

**MR. FRANK**:  But on Eight, you made the proper distinction in your question.  I wish you would continue doing that, separate in your questions.

**BY MS. LERNER:**

**Q**:  Do you recall receiving a copy of either Expert Nine or Expert 10 in early 2008?

**MR. FRANK**:  Objection to the extent you're asking for communications between him and his attorney.

**MS. LERNER**:  The letters on their face state that they were cc'd to Expert Electric.

**BY MS. LERNER:**

**Q**:  *My question is do you recall receiving a copy of either Expert Nine of [sic] 10 in early 2008?*

**MR. FRANK**:  *And are you excluding whether he received it from counsel - -*

**MS. LERNER**:  *That's just my question.*

**MR. FRANK**:  *Then we object to the question.  We object to the question on the grounds you're asking for communications between him and his attorney.  You may ask the question if he independently received a non-attorney/client - -*

**BY MS. LERNER:**

**Q**:  *Do you recall independently receiving a copy of either of those Exhibits nine or 10 in early 2008?*

**A**:  *I don't recall.*

[Exhibit C, pp. 41-44].

20.    In an effort to clarify the exact objection of Mr. Micelotta's counsel, Ms. Lerner asked the following questions for the record:

**BY MS. LERNER:**

**Q**:  *Okay, Mr. Micelotta, just to, I just want to be real clear about this.  I've asked you to take out Exhibits Seven,[10] Eight, Nine, and 10 again.*

---

[10]Exhibit Seven [Exhibit H hereto] is a letter dated January 16, 2008, from the Union to UECA requesting formal recognition of the Union as the exclusive bargaining representative of the employees of UECA's employer members and also requesting the

**MS. LERNER**: *And I realize I'm anticipating an objection, I just want the record to be very clear about what our positions are, Mr. Frank, okay.*

**BY MS. LERNER**:

**Q**: *Expert Seven and Eight, if I remember correctly and correct me if I'm wrong, you said that you recalled seeing those two letters, correct?*

**MR. FRANK**: *Objection to form. And for the record I believe you're mischaracterizing what the testimony was.*

**MS. LERNER**: *Well, if I'm not correct then he can correct me.*

**BY MS. LERNER**:

**Q**: *All right, let's get to another question. And I'm anticipating an objection. Do you recall receiving a copy of Expert Seven or Expert Eight from counsel on or about January of 2008?*[11]

**MR. FRANK**: *Objection, attorney/client privilege.*

**BY MS. LERNER**:

**Q**: *Do you recall receiving a copy of Expert nine or 10 at the company? In other words, you know, it*

---

resumption of collective bargaining. The letter indicates that Expert and James Frank, Esq. (Expert's counsel) were carbon copied.

[11] Exhibits H and E hereto, respectively.

*indicates, both those letters indicate that they were cc'd to Expert Electric. So, my first question is do you recall receiving copies of those letters at your company on or around March of 2008?*

**MR. FRANK:** *Are you asking about from counsel or from - -*

**MS. LERNER:** *I said at the company.*

**MR. FRANK:** *No, from who?*

**BY MS. LERNER:**

**Q:** *From the Union.*

**A:** *I don't recall.*

**Q:** *Do you recall receiving a copy of either Expert Nine or Expert 10 from your counsel?*

**MR. FRANK:** *Objection, asking for attorney/client communication.*

**MS. LERNER:** *And with these objections you're instructing your client not to answer those questions, Mr. Frank?*

**MR. FRANK:** *You're asking for privileged communications.*

**MS. LERNER:** *I'm asking you with your objection are you instructing your client not to answer those questions?*

18

**MR. FRANK**:  *Yes.  He's not waiving attorney/client privilege.*

**MS. LERNER**:  *Okay.*

**MR. FRANK**:  *Unless we get a ruling.*

[Exhibit C, pp. 48-50].

21.    Near the end of the deposition, Mr. Micelotta's counsel objected to the Board's questions one final time.  Despite the warning from Ms. Lerner and the repeated explanations of why the information sought was not privileged, Mr. Micelotta and his legal counsel avoided answering relevant questions by asserting privilege where none existed.  The deposition transcript reflects the following exchange:

**BY MS. LERNER:**

**Q**:  *Do you recall seeing either, a copy of either Expert Nine of [sic] Expert Ten on or around March of 2008 from whatever source?*[12]

**MR. FRANK**:  *Is that other than attorneys?*

**MS. LERNER**:  *It's whatever source - -*

**MR. FRANK**:  *Well, then I object.  I object to the form to the extent you're asking for attorney/client communications.*

**MS. LERNER**:  *And you're instructing the witness not to answer those questions.*

---

[12]Exhibits F and G hereto, respectively.

**MR. FRANK**: *As to attorney/client communications.*
*If he has independent knowledge not from*
*attorney/client communications he can answer it.*

**BY MS. LERNER:**

**Q**: *Do you have independent recollection without*
*attorney/client communications of seeing either*
*Expert Nine or Expert 10 on or around March of*
*2008?*

**A**: *No, I don't have a recollection.  I don't, I don't*
*recall.*

**Q**: *Okay.*

[Exhibit C, p. 51].

22.     By unreasonably and improperly asserting attorney-client privilege in this
context, Expert has failed to comply with Subpoena #A-851506.

23.     By unreasonably and improperly asserting attorney-client privilege in this
context, Expert and its legal counsel, James Frank, Esq. have impeded and are
impeding the Board's investigation into Expert's compliance with D.C. Circuit Court
Judgment Nos. 06-1180 and 06-1198.

24.     Section 11(2) of the Act specifically authorizes the Board to make an
"application" to the district court for a summary disposition of the Board's application to
enforce the Board's subpoena.  The Board's application is a dispositive matter, not a
pre-trial civil discovery matter in district court.  "It is significant that the statute calls for
an 'application' rather than a petition, an 'order' rather than for a judgment, and that it

details no other procedural steps." <u>Goodyear Tire & Rubber Co. v. NLRB</u>, 122 F.2d

450, 451 (6th Cir. 1941).

WHEREFORE, the applicant, National Labor Relations Board, respectfully prays

that this Court enter an order forthwith:

(a)  Compelling Respondent Expert Electric, Inc. to appear for the continuation

and completion of its deposition pursuant to Subpoena #A-851506, at a date, time and

place designated by the Board;

(b)  Compelling Respondent Expert Electric, Inc. to answer fully and candidly all

questions herein identified, appropriate follow-up questions, and all questions relating to

Expert's compliance with D.C. Circuit Judgment Nos. 06-1180 and 06-1198.

(c)  Requiring Respondent Expert Electric, Inc. to reimburse the Board for the

costs and attorneys fees (calculated at the prevailing market rate) incurred in initiating

and prosecuting this subpoena enforcement action; and in traveling back to Brooklyn,

New York, to continue and complete its investigatory deposition of Expert Electric, Inc.

(d)  That the applicant, National Labor Relations Board, have such other and

further relief as may be necessary and appropriate.

SIGNED at Washington, District of Columbia, this 17th day of September 2010,


NATIONAL LABOR RELATIONS BOARD

HELENE LERNER, Trial Attorney
(202) 273-3738
Helene.Lerner@nlrb.gov
Bar Code HL1835

STANLEY R. ZIRKIN, Assistant General Counsel


21

(202) 273-3739
Stanley.Zirkin@nlrb.gov

POLLY MISRA, Trial Attorney
(202) 273-3744
Polly.Misra@nlrb.gov

Contempt Litigation and Compliance Branch
1099 14th Street, N.W., Suite 10700
Washington, D.C.  20570
Tel:  (202) 273-3740
Fax:  (202) 273-4244

UECA subpoena application #2

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 06-1180**

[1082540]

EXPERT ELECTRIC, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

**September Term, 2007**

FILED ON: NOVEMBER 27, 2007

---

Consolidated with 07-1074

---

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

---

Before: SENTELLE, RANDOLPH and KAVANAUGH, *Circuit Judges.*

## JUDGMENT

This petition for review and cross-application for enforcement were considered on the record from the National Labor Relations Board and on the briefs and arguments of the parties. It is

**ORDERED AND ADJUDGED** that the petition for review be denied and the Board's cross-application for enforcement be granted.

Petitioner Expert Electric, Inc. (Expert) disputes the Board's finding that it unlawfully withdrew from multiemployer bargaining and withdrew recognition from Local 3, International Brotherhood of Electrical Workers, AFL-CIO (Local 3).



Because Local 3 did not consent to Expert's withdrawal, Expert was entitled to withdraw only if "unusual circumstances" existed. *Retail Assocs., Inc.*, 120 NLRB 388, 395 (1958). Expert alleges three circumstances worth discussing: (1) the United Electrical Contractors Association (Association) expelled Expert because Expert's owner disagreed with the Association's strategy, (2) interim agreements fractured the multiemployer bargaining unit, and (3) Local 3 bargained in bad faith.

The record supports the administrative law judge's finding that the Association expelled Expert because of its owner's disruptive behavior, not his views. Because Expert's expulsion resulted from its own actions, this case is similar to those in which an employer's expulsion for failure to pay dues did not remove the obligation to participate in multiemployer bargaining. *E.g., Roberts Elec. Co.*, 227 NLRB 1312, 1317 (1977).

The interim agreements between Local 3 and individual employers provided that the agreements would end when the Association signed its own agreement with Local 3. Two memoranda of understanding provided that they would survive an agreement between the Association and Local 3. However, they also stated that the survival language would be "null and void" if the Board were to find it "inconsistant [sic] with the proper scope of an interim agreement." These temporary agreements did not excuse Expert's withdrawal. *Charles D. Bonanno Linen Serv., Inc. v. NLRB*, 454 U.S. 404, 414-15 (1982).

Substantial evidence supported the finding that Local 3 did not bargain in bad faith. Such a determination is "largely a matter for the Board's expertise." *NLRB v. Cauthorne*, 691 F.2d 1023, 1026 n.5 (D.C. Cir. 1982).

Expert also challenges the Board's finding that it unlawfully delayed in providing its employees' telephone numbers to Local 3. Expert does not dispute that it first produced these numbers about four months after Local 3 requested them. The Board has held delays shorter than four months to be unlawful, *e.g., Crittenton Hosp.*, 343 NLRB 717, 745 (2004), and we defer to its judgment here, *Truck Drivers Local No. 705 v. NLRB*, 509 F.2d 425, 428 (D.C. Cir. 1974).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after

- 3 -

resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:

Deputy Clerk

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

## No. 06-1198

[1082519]

United Electrical Contractors Association, et al.,
Petitioners

v.

National Labor Relations Board,
Respondent

## September Term, 2007
FILED ON: November 27, 2007

---

Consolidated with 07-1075

---

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

---

Before: Sentelle, Randolph and Kavanaugh, *Circuit Judges*.

## J U D G M E N T

This petition for review and cross-application for enforcement were considered on the record from the National Labor Relations Board and on the briefs and arguments of the parties. It is

**ORDERED AND ADJUDGED** that the petition for review be denied and the Board's cross-application for enforcement be granted.

Petitioner United Electrical Contractors Association (United) disputes the Board's finding that it unlawfully withdrew from multiemployer bargaining with Local Union No. 3, International Brotherhood of Electrical Workers (Union), and asserts that the Board did not act within its remedial power when it issued a bargaining order.

- 2 -

After negotiations began, United could withdraw from multiemployer bargaining only by "mutual consent" or if "unusual circumstances exist[ed]." *Retail Assocs., Inc.*, 120 N.L.R.B. 388, 395 (1958). The parties agree there was no mutual consent. United alleges two unusual circumstances worth addressing: (1) the Union bargained in bad faith, and (2) the Union fragmented the bargaining unit.

Substantial evidence supports the administrative law judge's finding that the Union did not negotiate in bad faith. The parties only need to bargain with the intention of reaching an agreement, *NLRB v. Ins. Agents' Int'l Union*, 361 U.S. 477, 488 (1960), and this court gives deference to the Board's determination, which is "largely a matter for the Board's expertise." *NLRB v. Cauthorne*, 691 F.2d 1023, 1026 n.5 (D.C. Cir. 1982).

United argues that interim agreements between the Union and individual employers within United fragmented the bargaining unit. The record supports the administrative law judge's finding that these interim agreements did not enable United to withdraw from bargaining. The vast majority of the interim agreements were temporary – they would be superseded by a contract reached by United and the Union. *Charles D. Bonanno Linen Serv., Inc. v. NLRB*, 454 U.S. 404, 414-15 (1982). Further, the interim agreements did not dissipate United to the point that multiemployer bargaining was not viable. *Callier's Custom Kitchen*, 243 N.L.R.B. 1114, 1117 (1979) (finding no fragmentation when 40 of 65 employers signed interim agreements).

United waived the argument that the bargaining order adversely affected its employees' § 7 rights. *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 666 (1982) ("[T]he Court of Appeals lacks jurisdiction to review objections that were not urged before the Board."). While United did except generally to the remedy of the bargaining order, its exception was not sufficiently particular to preserve the challenge. *Scepter, Inc. v. NLRB*, 280 F.3d 1053, 1057 (D.C. Cir. 2002) (noting that because the party "failed to raise a particularized challenge to the bargaining order before the Board, this court has no authority to address the issue").

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after

- 3 -

resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App.
P. 41(b); D.C. Cir. R. 41.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:

Deputy Clerk

## UNITED STATES OF AMERICA
## NATIONAL LABOR RELATIONS BOARD

To   **Expert Electric, Inc.***

As requested by ___ **Helene D. Lerner, Trial Attorney** ___

whose address is ___ **1099 14th Street, NW, Suite 10700, Washington, DC** ___ **20005**

          (Street)                      (City)                (State)     (ZIP)

YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE ___ **an Agent** ___

___ of the National Labor Relations Board

at ___ **Region 29, Two MetroTech Center, 100 Myrtle Avenue, 5th Floor** ___

in the City of ___ **Brooklyn, New York** ___

on the ___ **9th** ___ day of ___ **July** ___ 20 **10** at ___ **10:00** ___ (a.m.) ~~(p.m.)~~ or any adjourned

or rescheduled date to testify in ___ **Expert Electric, Inc., Board Case No. 29-CA-28100;** ___

                            (Case Name and Number)

        **UBCA, Board Case No. 29-CA-27928**

        **\* See Attachment**

In accordance with the Board's Rules and Regulations, 29 C.F.R. Section 102.31(b) (unfair labor practice proceedings) and/or 29 C.F.R. Section 102.66(c) (representation proceedings), objections to the subpoena must be made by a petition to revoke and must be filed as set forth therein. Petitions to revoke must be received within five days of your having received the subpoena. 29 C.F.R. Section 102.111(b) (3). Failure to follow these regulations may result in the loss of any ability to raise such objections in court.

**A - 851506**

Under the seal of the National Labor Relations Board, and by direction of the Board, this Subpoena is

Issued at   **Washington, DC**

this **24th**   day of   **June**   20 **10**

*Lester A. Heltzer* (signature)

**NOTICE TO WITNESS.** Witness fees for attendance, subsistence, and mileage under this subpoena are payable by the party at whose request the witness is subpoenaed. A witness appearing at the request of the General Counsel of the National Labor Relations Board shall submit this subpoena with the voucher when claiming reimbursement.

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2008). Disclosure uses upon request. Disclosure of this information ___ the information may cause the subpoena in federal court.



Exhibit B

## ATTACHMENT TO SUBPOENA

Consistent with Fed.R.Civ.P. 30(b)(6), Expert Electric, Inc. is requested to
designate one or more officers, directors, or managing agents, or other persons
who consent to testify on its behalf, that is or are most knowledgeable about the
following issues:

1. the request(s) for information issued by Local 3, IBEW, AFL-CIO
   ("Local 3") to Expert Electric, Inc. either directly or through United
   Electrical Contractors Association during the period January 1,
   2006 through the present;
2. the response(s) to those requests and/or the lack thereof;
3. the reasons behind the response(s) to those requests and/or the
   reason(s) no response or responsive information was provided to
   Local 3.
4. any and all of Expert Electric, Inc.'s efforts to comply with the
   NLRB's Court enforced Decision and Order reported at 347 NLRB
   No. 1 (2006).

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

------------------------------

In the Matter of:

NATIONAL LABOR RELATIONS
BOARD,

v.

EXPERT ELECTRIC, INC.,
------------------------------

Case No. 29-CA-27928

(Nos. 06-1180 and 06-1198 D.C. Cir)

Contempt Litigation No. 09-CLB-84

Whereupon, Deposition of:

### JOHN MICELOTTA

a witness of lawful age, was called for and taken before a Court
Reporter and Notary Public at the National Labor Relations
Board, Two Metro Tech Center, Brooklyn, New York on Tuesday,
August 3, 2010, at 10:00 a.m.
When were present:

On Behalf of the National labor Relations Board:

　　　　HELEN LERNER, Esq.
　　　　Board Attorney
　　　　National Labor Relations Board
　　　　Contempt Litigation Branch
　　　　1099 14th Street, NW Suite 10700
　　　　Washington, DC 20570-0001

On behalf of the Expert Electric:

　　　　JAMES S. FRANK, Esq.
　　　　Epstein, Becker & Green, P.C.
　　　　250 Park Avenue
　　　　New York, New York 10177

Official Reporters
BURKE COURT REPORTING COMPANY, LLC
1044 Route 23, Suite 316
Wayne, New Jersey 07470
(973) 692-0660

Exhibit C

1
2
3

**E X H I B I T S**

**EXHIBIT**

**IDENTIFIED**

4

5   Government's Expert Exhibits:

6         Expert-1

                                                    4
7         Expert-2

                                                  13
8         Expert-3 and 4

                                                  14
9         Expert-5

                                                  18
10        Expert-6

                                                  25
11        Expert-7 and 8

                                                  49
12        Expert-9 and 10

                                                  51
13        Expert-11

                                                  45
14        Expert-12 thru 16

                                                  45
15        Expert-17

                                                  --
16        Expert-18

                                                  30
17        Expert-19

                                                  30
18        Expert-20

                                                  34

1

1    it in your inbox?

2         A    Yes.

3         Q    But sometimes you're there and you open it correct?

4         A    Yes.

5         Q    Now, Mr. Frank's firm has represented Expert Electric

6    in labor relations matters?

7         A    Yes.

8         Q    How long has that firm represented --

9              MR. FRANK:  Objection.

10   BY MS. LERNER:

11        Q    -- Expert Electric?

12             MR. FRANK:  Objection, you're asking for privileged

13   information.

14             MS. LERNER:  I just want to know how long he

15   represented them, that's not --

16             MR. FRANK:  Objection.

17             MS. LERNER:  I'm going to ask this question again.

18   BY MS. LERNER:

19        Q    How long has Mr. Frank's firm represented Expert

20   Electric in labor relations matters?  I'm not asking for advice.

21   I'm not asking for communications.  I'm just asking how long

22   they've represented Expert Electric in labor relations matters?

23        A    Can I answer.

24             MR. FRANK:  Yes, I have an objection on the record.

25             THE WITNESS:  Okay.  I'd have to say approximately, I

1  think about --

2  BY MS. LERNER:

3      Q    Or any firm that Mr. Frank has been employed by?

4          MR. FRANK:  Well, objection to form.

5      Q    At least five years?

6      A    Yes.

7      Q    Okay.  As far as you can remember and as far as you

8  know if Mr. Frank by the firm that he's been employed by --

9      A    Uh-huh.

10      Q    - if he received a letter related to negotiations or

11  to litigation, NLRB limitation that your company is involved

12  with would he, would it be common for him to send you a copy of

13  the letter that he received?

14          MR. FRANK:  Don't answer.  Objection, you're asking

15  for attorney/client communications, that's privileged.

16  BY MS. LERNER:

17      Q    I'm just asking if he received a letter would he send

18  you a copy?

19          MR. FRANK:  Objection.  Do not answer the question.

20          MS. LERNER:  Why is that --

21          MR. FRANK:  It's attorney/client privilege.

22          MS. LERNER:  Why is that --

23          MR. FRANK:  Communications between attorney and

24  client.

25          MS. LERNER:  To send him a copy of a letter?

12

1          MR. FRANK:  You're asking about attorney/client

2    communications.

3          MS. LERNER:  Where's the attorney/client

4    communications?  He's sending a copy of a letter that you didn't

5    even draft.  If a, if a letter from the NLRB came to Mr. Frank

6    concerning --

7          MR. FRANK:  You're asking about communications between

8    attorney and client, objection, that's privileged.

9          MS. LERNER:  Okay. I'm going to tell you if I have to

10   go to court and get these answers and get the subpoena enforced

11   in court so that I can get answers to certain questions that Mr.

12   Frank is instructing you not to answer because I don't think

13   there is a privilege.

14         I'm just stating this on the record, I'm going to seek

15   attorney fees and costs in my having to come back, in my

16   preparing my application to enforce the subpoena, and if I have

17   to come back and get these questions answered, I'm going to ask

18   for costs and attorney fees.  I just want you to understand

19   that, okay.  I'm not asking for anything that he might have said

20   to you.

21         I'm just asking if you received a letter in the mail

22   that concerned your company and the Labor Board or the Union

23   whether or not you received a copy of that letter from him,

24   okay.

25         MR. FRANK:  You're asking for communications between

BURKE COURT REPORTING, LLC
(973) 692-0660

1 | an attorney and client.

2 |       MS. LERNER:  WE can move on.

3 |       MR. FRANK:  Plus the witness --

4 |       MS. LERNER:  We can differ.

5 |       MR. FRANK:  Well, plus you're also asking him some of

6 | the other than he did so he wouldn't know this information.

7 |       MS. LERNER:  I asked him if he received a copy of a --

8 |       MR. FRANK:  You're asking did he receive --

9 |       MS. LERNER:  -- copy of a letter.

10 |       MR. FRANK:  -- a communication from his client, or

11 | from his attorney, correct?

12 |       MS. LERNER:  Well, I beg to differ but let's

13 | move on.

14 |       MR. FRANK:  And by the way, I think your comments in

15 | the record are inappropriate.

16 |       MS. LERNER:  Okay.

17 | BY MS. LERNER:

18 |    Q    I'm showing you what we've labeled as Government

19 | Exhibit Expert Two.

20 |          My question is have you ever seen a copy of this

21 | document before?

22 |       (Government's Expert Exhibit Expert Two identified)

23 |    A    I believe so, yeah.

24 |    Q    And you are aware that the D.C. Circuit issued a

25 | judgement that enforced an order of the National Labor Relations

BURKE COURT REPORTING, LLC
(973) 692-0660

1  they reached?

2       A    I can answer that.

3       MR. FRANK:  Yes.

4       THE WITNESS:  Yes.

5       MS. LERNER:  Okay.

6  BY MS. LERNER:

7       Q    What steps have you and/or your company taken in order

8  to comply with those Board Decisions and the court judgement?

9       A    Well, number one, we posted all the notices.  I filled

10 out the form work that we post these notices.  I signed the two

11 affidavits and I recognized I, I, I, I agreed that I had to be

12 bound by whatever agreement the UECA came to collectively with

13 the Union.

14      Q    I'm showing you what I've labeled as Expert Exhibit

15 Five.  I'm going to ask you --

16      **(Government's Expert Exhibit Five identified)**

17      A    I already have a copy of that.

18      Q    Oh, okay, good.  Have you ever seen a copy of this

19 letter before or the original?

20      A    I don't recall.

21      Q    Did you ever come to learn that my office, the

22 Contempt Branch of the Labor Board was investigating whether or

23 not Expert Electric had complied with the D.C. Circuit's

24 judgement?

25      MR. FRANK:  Objection.  Do not answer based on

BURKE COURT REPORTING, LLC
(973) 692-0660

1  anything you learned between communications with you and your
2  attorneys.  I assume you're not asking for communications or
3  knowledge gained from conversations with counsel?
4          MS. LERNER:  I think I can ask --
5          MR. FRANK:  Is that correct?
6          MS. LERNER:  -- him did he ever come to an
7  understanding.
8          MR. FRANK:  No.
9          MS. LERNER:  I'm not asking about what communications
10 were.
11         MR. FRANK:  You can't ask him about information he
12 learned from his attorneys or communications he had with his
13 attorneys, that's attorney/client privilege.
14 BY MS. LERNER:
15     Q     Were you ever informed --
16         MR. FRANK:  Other than by counsel.
17         THE WITNESS:  No.
18 BY MS. LERNER:
19     Q     You are aware that my office is investigating whether
20 or not your company has complied with the D.C. Circuit's
21 judgement correct?
22         MR. FRANK:  Same objection to the extent that you're
23 asking for communications between him and counsel, those are
24 objected to and privileged.  If you're asking him the question
25 of any independent knowledge he may have, I have no objection to

BURKE COURT REPORTING, LLC
(973) 692-0660

1   that .

2         MS. LERNER:  I'm asking him whether or not he is

3   aware, that's my question, whether or not --

4         MR. FRANK:  Are you asking about --

5         MS. LERNER:  -- that he is aware --

6         MR. FRANK:  -- are you excluding information from

7   counsel, or are you asking about information he learned from

8   counsel?

9         MS. LERNER:  He answered based on, well, my question

10  is, and if you're instructing him not to answer that question,

11  my question is is he aware that my office is investigating

12  whether or not his company is complying or has complied with the

13  D.C. Circuit Court's judgement?  And I understand your

14  objection, again I have to state for the record if I have to

15  file an application to enforce the subpoena to get these

16  questions answered, I'm going to seek cost and attorneys fees in

17  doing so.

18        MR. FRANK:  Counsel, you did that once and they were

19  denied.  Your petition to the Court previously was dismissed.

20  Are you, oh, you withdrew it, that's correct.  Your prior

21  petition to the court was dismissed.

22        MS. LERNER:  Can we go on?

23        MR. FRANK:  Yes.

24        MS. LERNER:  Is that your response?

25        MR. FRANK:  No, my response is would you clarify the

1   question.  Are you asking about communications with counsel or
2   are you not?  Are you excluding communications with the counsel
3   in your question ?

4            MS. LERNER:  I'm not asking about communications.  I'm
5   just asking whether or not he is aware that my office is
6   investigating whether or not his company is complying with the
7   D.C. Circuit Court's judgement, that's the question.  And if
8   you're instructing him not to answer, that's fine, let's move
9   on.

10           MR. FRANK:  I'm instructing him not to testify
11  regarding communications with counsel.

12           MS. LERNER:  I'm not asking him --

13           MR. FRANK:  If you can --

14           MS. LERNER:  -- about what counsel exactly said to
15  him.

16           MR. FRANK:  You're asking about information he learned
17  from  counsel, that's privileged.

18           MS. LERNER:  I'm asking him whether or not he has an
19  understanding or has had an understanding that my office was
20  investigating --

21           MR. FRANK:  If you can answer that question not based
22  on communications with counsel you may answer.

23           THE WITNESS:  I can't.

24           MS. LERNER:  Okay.

25  BY MS. LERNER:

BURKE COURT REPORTING, LLC
(973) 692-0660

1     Q    Have you in the last or since October of 2009 have you

2  participated in collecting documents to submit to my office

3  regarding your company's compliance with the D.C. Circuit

4  Court's judgement?

5     A    No.  Not that I recall, no.

6     Q    Take a look at Expert Exhibit Five and let's go, read

7  each item.  You have not participated at all in looking for any

8  documents that are listed on Items one, two, three or four of

9  Exhibit Five?

10     MR. FRANK:  Objection to form.  And again we object to

11  the extent you're asking for communications with counsel.

12     MS. LERNER:  You can blanket every question I ask with

13  an objection to the extent it asks for attorney/client

14  communication.

15  BY MS. LERNER:

16     Q    But I'm asking you on Expert Exhibit Five read items

17  one, two, three and four, and my question to you is did you ever

18  participate in collecting or locating any documents that are

19  listed in those four items?

20     MR. FRANK:  Let me take a break for a second.

21     MS. LERNER:  I've got a question pending, so you're

22  not going to --

23     MR. FRANK:  I understand.

24     MS. LERNER:  -- talk to him while a question is

25  pending.

1    MR. FRANK:  I object to the question to the extent

2  it's asking for communications with counsel and --

3    MS. LERNER:  You've said that many times.  I didn't,

4  my question has nothing to do with communications.  I just asked

5  whether --

6    MR. FRANK:  Well, that --

7    MS. LERNER:  -- he participated in collecting any

8  documents that are listed --

9    MR. FRANK:  But that includes --

10    MS. LERNER:  -- in those four items.

11    MR. FRANK:  It includes communications with counsel

12  and obtaining documents for counsel, that's the objection to the

13  question.

14    THE WITNESS:  Are you saying did I participate with

15  counsel in collecting documents?  I'm not --

16  BY MS. LERNER:

17    Q    Well, my question is reading those four items, can you

18  remember looking for any documents or collecting any documents

19  that are listed in those four items?

20    MR. FRANK:  Answer that question, I'm going to take a

21  break.

22    THE WITNESS:  Yes.

23  BY MS. LERNER:

24    Q    You did, which one?

25    MR. FRANK:  Now, we're going to have to get a ruling

1     Q    Yes.

2     A    -- I don't recall if there was any separate building

3  industry fund meetings.

4     Q    Yes.  When prior to your, I'm sorry.  What year again

5  was Expert expelled from the association?

6     A    Late 90s, '97, I believe, something like that.

7     Q    So, I guess this is going to be a dumb question but

8  since then Expert Electric hasn't attended any meetings of UECA?

9     A    No.

10     Q    Would you take a look at Government Exhibit Expert

11  Seven.  I want you to tell me if you've ever seen a copy of this

12  letter before?

13     A    I don't recall.

14     Q    What about Government Exhibit Expert Eight have you

15  seen a copy of that before?

16     A    This one here?

17     Q    You mean Expert Seven?

18     A    Oh, okay.  No, I don't recall seeing this.

19     Q    Were you ever aware that Local Three requested

20  information from UECA with regard to its contractors in January

21  of 2008?

22         MR. FRANK:  Again, are you inquiring about

23  communications with counsel or are you excluding attorney/client

24  communications?

25         MS. LERNER:  I'm asking about from any source

1    whatsoever was he aware that --

2         MR. FRANK:  But you're not to answer the question

3    about communications that you had with your attorneys, so I

4    would object to the question unless you want to clarify it to

5    non-attorney/client communications.  Would you so clarify your

6    request or, are you --

7         MS. LERNER:  Well, I'm not sure if the witness can

8    answer that, because it say that he was cc'd with a copy of the

9    January 26, 2008, Expert Eight, so I'm not sure if the witness

10   in his own mind can differentiate and therein lies our problem.

11        MR. FRANK:  Well, the witness can answer from his own

12   knowledge if he has it other than communications from counsel.

13   My objection is limited to communications and information he

14   received from counsel.

15   BY MS. LERNER:

16        Q    Okay.  Two parts, eliminating your communications with

17   counsel were you aware that in January of 2008 Local Three was

18   requesting information from UECA concerning its contractors that

19   it was representing?

20        A    Would you repeat that one more time?

21        Q    Not counting communications --

22        A    It's hard to remember.

23        Q    I realize that, take your time.  Not counting

24   communications with counsel were you aware that in January of

25   2008 Local Three was requesting information from UECA concerning

43

1   the contractors that UECA was representing in negotiation?

2        A    I think so.

3        Q    Okay.  How about Expert Exhibit Nine does this

4   document look familiar to you?  You know what I'm going to give

5   you Exhibit 10 as well because it's essentially almost the same

6   thing.  Do you recognize either Exhibit 9 or 10?

7        A    Yes.

8        Q    You recognize which one?

9        A    It looks familiar.  I can't say that I saw this exact

10  letter but it looks familiar.

11       Q    Exhibit 9 and 10?

12       A    Nine.

13       Q    Nine.  What about Exhibit 10?

14       A    That's the same thing isn't it?

15       Q    Yes, that's addressed to UECA instead of --

16       A    I couldn't tell you.

17       MR. FRANK:  I'm renewing my request to the extent

18  you're asking for attorney/client communications.

19       MS. LERNER:  And I think he can answer whether or not

20  he recognizes this document.

21       MR. FRANK:  But on Eight, you made the proper

22  distinction in your question.  I wish you would continue doing

23  that, separate in your questions.

24  BY MS. LERNER:

25       Q    Do you recall receiving a copy of either Expert Nine

44

1    or Expert 10 in early 2008?

2              MR. FRANK:  Objection to the extent you're asking for

3    communications between him and his attorney.

4              MS. LERNER:  The letters on their face state that they

5    were cc'd to Expert Electric.

6    BY MS. LERNER:

7         Q    My question is do you recall receiving a copy of

8    either Expert Nine of 10 in early 2008?

9              MR. FRANK:  And are you excluding whether he received

10   it from counsel --

11             MS. LERNER:  That's just my question.

12             MR. FRANK:  Then we object to the question.  We object

13   to the question on the grounds you're asking for communications

14   between him and his attorney.  You may ask the question if he

15   independently received a non-attorney/client --

16   BY MS. LERNER:

17        Q    Do you recall independently receiving a copy of either

18   of those Exhibits nine or 10 in early 2008?

19        A    I don't recall.

20        Q    Expert 11 do you recall receiving a copy of this

21   letter that's dated December 1, 2008?

22             (Government's Expert Exhibit 11 marked)

23        A    No.

24        Q    If you flip to the back this is the way this

25   particular document was produced to us from UECA.  My question

BURKE COURT REPORTING, LLC
(973) 692-0660

4?

1  to you is where it says on the return receipt card, "G.

2  Baboolal", do you recognize the signature of Ms. Baboolal who is

3  employed by your company?

4      A    I don't recognize her signature but she is employed by

5  my company.

6      Q    Okay.

7      A    I just don't remember seeing this letter.

8      Q    Okay.

9          MR. FRANK:  Is this document Bate Stamped?

10         MS. LERNER:  No, it's not, not to my knowledge.  No.

11         MR. FRANK:  Was something redacted from the back page?

12         MS. LERNER:  No, this is, I, this is the way it was

13  produced to me.

14  BY MS. LERNER:

15     Q    I'm going to show you Expert Exhibit 12, 13, 14, 15

16  and 16, and my question will be do you recall if any of those

17  documents look familiar to you and do you recall receiving those

18  letters on or about their date?

19  (Government's Expert Exhibits 12 thru 16 marked)

20         MR. FRANK:  Objection to form.

21  BY MS. LERNER:

22     Q    Do any of the documents, 12, 13, 14, 15, or 16 look

23  familiar to you?

24     A    Thirteen, no.  Fourteen, yes.  I don't recall seeing

25  11.

BURKE COURT REPORTING, LLC
(973) 692-0660

48

1     Q   Okay.  But you mean an unfair labor practice charge

2  that the Union --

3     A   Yeah.

4     Q   -- may have filed?

5     Okay.  Do you know if Expert Electric has, presently

6  has any of the information that is listed in one, two and three?

7     A   Of course it would have one.

8     Q   Yes.

9     A   And Two.

10    Q   Yes.

11    A   And I don't know about three.

12    Q   Right, we discussed that and you were going to look to

13  see if Expert Electric does in fact have copies of those

14  documents, right?

15    A   Right.

16    Q   Okay.

17    MS. LERNER:  Can we go off the record?

18              **(Off the record)**

19  BY MS. LERNER:

20    Q   Okay, Mr. Micelotta, just to, I just want to be real

21  clear about this.  I've asked you to take out Exhibits Seven,

22  Eight, Nine and 10 again.

23    MS. LERNER:  And I realize I'm anticipating an

24  objection, I just want the record to be very clear about what

25  our positions are, Mr. Frank, okay.

49

1    BY MS. LERNER:

2         Q    Expert Seven and Eight, if I remember correctly and

3    correct me if I'm wrong, you said that you recalled seeing those

4    two letters, correct?

5              MR. FRANK:  Objection to form.  And for the record I

6    believe you're mischaracterizing what the testimony was.

7              MS. LERNER:  Well, if I'm not correct then he can

8    correct me.

9    BY MS. LERNER:

10        Q    All right, let's get to another question.  And I'm

11   anticipating an objection.  Do you recall receiving a copy of

12   Expert Seven or Expert Eight from counsel on or about January of

13   2008?

14        (Government's Expert Exhibits seven and eight identified)

15             MR. FRANK:  Objection, attorney/client privilege.

16   BY MS. LERNER:

17        Q    Do you recall receiving a copy of Expert Nine or 10 at

18   the company?  In other words, you know, it indicates, both those

19   letters indicate that they were cc'd to Expert Electric.  So, my

20   first question is do you recall receiving copies of those

21   letters at your company on or around March of 2008?

22             MR. FRANK:  Are you asking about from counsel or from

23   --

24             MS. LERNER:  I said at the company.

25             MR. FRANK:  No, from who?

BURKE COURT REPORTING, LLC
(973) 692-0660

1   BY MS. LERNER:

2       Q     From the Union.

3       A     I don't recall.

4       Q     Do you recall receiving a copy of either Expert Nine

5   or Expert 10 from your counsel?

6           MR. FRANK:  Objection, asking for attorney/client

7   communication.

8           MS. LERNER:  And with these objections you're

9   instructing your client not to answer those questions, Mr.

10  Frank?

11          MR. FRANK:  You're asking for privileged

12  communications.

13          MS. LERNER:  And I'm asking you with your objection

14  are you instructing your client not to answer those questions?

15          MR. FRANK:  Yes.  He's not waiving his attorney/client

16  privilege.

17          MS. LERNER:  Okay.

18          MR. FRANK:  Unless we get a ruling.

19  BY MS. LERNER:

20      Q     My question question do you recall seeing either

21  Expert Nine or Expert 10 around March of 2008?

22          MR. FRANK:  And is this question from other than

23  communications with his attorneys?

24          MS. LERNER:  It's a broad question, do you recall --

25          MR. FRANK:  Well, I object to the question to the

BURKE COURT REPORTING, LLC
(973) 692-0660

1  extent --

2         MS. LERNER:  Let me get the question out.

3         MR. FRANK:  Okay.

4  BY MS. LERNER:

5     Q    Do you recall seeing either, a copy of either Expert

6  Nine of Expert Ten on or around March of 2008 from whatever

7  source?

8         (Government's Experts Exhibit nine and ten identified)

9         MR. FRANK:  Is that other than attorneys?

10        MS. LERNER:  It's whatever source --

11        MR. FRANK:  Well, then I object.  I object to the form

12  to the extent you're asking for attorney/client communications.

13        MS. LERNER:  And you're instructing the witness not to

14  answer those questions.

15        MR. FRANK:  As to attorney/client communications.  If

16  he has independent knowledge not from attorney/client

17  communications he can answer it.

18  BY MS. LERNER:

19    Q    Do you have an independent recollection without

20  attorney/client communications of seeing either Expert Nine or

21  Expert 10 on or around March of 2008?

22    A    No, I don't have a recollection.  I don't, I don't

23  recall.

24    Q    Okay.

25        MS. LERNER:  I have no further questions.  Do you have



**OFFICE OF THE GENERAL COUNSEL**

CONTEMPT LITIGATION AND COMPLIANCE BRANCH

1099 14th Street, N.W., Suite 10700
Washington, D.C. 20570-0001

October 9, 2009

James S. Frank, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177-1211

            VIA FACSIMILE (w/o encl.) AND REGULAR MAIL
            [corrected letter]

      Re:    *NLRB v. Expert Electric, Inc.*
            Board Case No. 29-CA-28100
            (Nos. 06-1180 and 06-1198 – D.C. Cir.)
            Contempt Litigation No. 09-CLB-84

Dear Mr. Frank:

      The Board's Region 29 has referred this matter to our office with a recommendation that we institute contempt proceedings against your client. It is the Region's view that Expert Electric, Inc. ("Expert") has violated the Judgments issued against it by the United States Court of Appeals for the District of Columbia Circuit by failing and/or refusing to provide Local 3, International Brotherhood of Electrical Workers, AFL-CIO, ("Local 3") with information regarding its employees, including, among other things, their wages and benefits, information which is necessary for collective bargaining with the United Electrical Contractors Association ("UECA"). Copies of the Court's Judgments and the Board Orders it enforced are enclosed for your reference.

      In order to assist our investigation into whether or not Expert has complied with the Court's Judgments, please provide this office with the following information within two weeks of today's date:

      1.     Copies of documents reflecting or demonstrating any and all steps taken by Expert to comply with the Court's Judgments.

      2.     Copies of documents reflecting any and all communications between Expert (including Expert's counsel) and UECA (including its counsel), during the period January 1, 2006 through the present, regarding Local 3's information requests

            Exhibit D



to Expert. This includes correspondence, facsimiles, e-mails, memoranda, and notes of conversations.

3.    Copies of documents reflecting any and all communications between Expert (including Expert's counsel) and Local 3 (including its counsel), during the period January 1, 2006 through the present, regarding Local 3's information requests to Expert. This includes correspondence, facsimiles, e-mails, memoranda, and notes of conversations.

4.    Copies of documents reflecting any and all communications between Expert (including Expert's counsel) and any other electrical contractor (including its counsel), during the period January 1, 2006 through the present, regarding Local 3's information requests to Expert. This includes correspondence, facsimiles, e-mails, memoranda, and notes of conversations.

Additionally, you are invited to submit any additional position you and/or your client may have with respect to this matter, also within two weeks of today's date.

Be advised that a finding of contempt may lead to fines being imposed upon Expert, an obligation to pay the Board's costs and attorneys fees, and/or possible imprisonment of company officials responsible for the contumacious conduct.

Your anticipated cooperation is appreciated and we look forward to hearing from you.

Very truly yours,

Helene D. Lerner
Trial Attorney
(202) 273-3738

Enclosures

cc:    NLRB, Region 29



# Local Union No. 3

**International Brotherhood of Electrical Workers**
OF GREATER NEW YORK AND VICINITY

**OFFICES AND HEADQUARTERS**
158-11 Harry Van Arsdale Jr. Avenue, Flushing NY 11365
Phone 718-591-4000 • Fax 718-380-8998

200 Bloomingdale Road, White Plains NY 10605
Phone 914-948-3800 • Fax 914-948-1843

AFFILIATED WITH AFL-CIO

NEW YORK CITY
CENTRAL LABOR COUNCIL
AFL-CIO

BUILDING & CONSTRUCTION
TRADES COUNCIL
OF GREATER NEW YORK
AFL-CIO

AND ALL STATE AND
CENTRAL BODIES

January 16, 2008

United Electrical Contractors Association/
United Construction Contractors Association
926 Lincoln Ave.
Holbrook, N.Y

Dear Sirs:

Re: Information Request

In anticipation of the commencement of negotiations, Local Union #3 IBEW requests the following information from all the employer members of the UECA and any former employer members that have caused their own expulsion from UECA:

1. A list of all the current and former employees from January 1, 2006 to present, including those on temporary lay-off including their names, last known addresses, telephone numbers, job classification, rates of pay, and dates of hire.

2. A copy of all remittance/contribution reports from January 1, 2006 detailing contributions to any fringe benefits funds. Including but not limited to the Local 363 IBT Pension Fund, Building Trades Annuity, Education and Welfare Funds.

3. A copy of all fringe benefit plans from January 1, 2006 including but not limited to pension, profit sharing, defined contribution plans, vacation, health and welfare, annuity, education or any other plans which relate to the employees that are either individually company sponsored or multi-employer or multiple-employer plans.

Please forward all information to my attention directly at the above address.

Very truly yours,

Vincent McElroen
Financial Secretary

Cc: S.Goodman, Jackson, Lewis LLP
    Expert Elec
    J. Frank, Epstein, Becker and Green P.C.
VMC:vmc
(ueca information request 011508)

Exhibit E


GOVERNMENT
EXHIBIT
Exper 8



## Local Union No.
### International Brotherhood of Electrical Workers
#### OF GREATER NEW YORK AND VICINITY

**OFFICES AND HEADQUARTERS**
158-11 Harry Van Arsdale Jr. Avenue, Flushing NY 11365
Phone 718-591-4000 • Fax 718-380-8998

200 Bloomingdale Road, White Plains NY 10605
Phone 914-948-3800 • Fax 914-948-1843

AFFILIATED WITH AFL-CIO

NEW YORK CITY
CENTRAL LABOR COUNCIL
AFL-CIO

BUILDING & CONSTRUCTION
TRADES COUNCIL
OF GREATER NEW YORK
AFL-CIO

AND ALL STATE AND
CENTRAL BODIES

March 3, 2008

**By Registered and Regular Mail**

James Frank, Esq.
Eptiein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177

Dear Sirs:

As Per the May 15, 2006 Orders issued by the NLRB in 347 NLRB Nos. 1 & 2, as enforced by judgments of the Court of Appeals for the D.C. Circuit, Nos. 06-1198 & 06-1180 Local 3 is requesting your formal recognition as the exclusive certified collective bargaining representative of the employees of the employer members of the UECA.

Local Union #3 IBEW is also requesting the resumption of bargaining on behalf of the individual employer-members of UECA and of any former employer-members that have caused their own expulsion from UECA, as the exclusive representative of the employees in the following appropriate bargaining unit:

> All electricians, electrical maintenance mechanics, helpers, apprentices and trainees employed in the electrical field employed by the employer-members of United Electrical Contractors Association a/k/a United Construction Contractors Association, but excluding all office clerical employees, guards and supervisors as defined in the Act.

Local 3 is available to negotiate on the following days: March 11, 18, 25 & 31, 2008. In past negotiating sessions the session alternated between a location provided by the UECA and Local 3. In accordance with this past practice, we suggest that it be resumed. Please contact me regarding the time, place and date available to negotiate.

I am also renewing my information request of January 16, 2008 (see attached).

Sincerely yours,

Vincent McElroen
Financial Secretary

Cc: Expert Elec.
    S. Goodman, Jackson & Lewis
    J. Frank, Epstein, Becker and Green P.C.
    (frank req to nego 03032008)

Exhibit F



GOVERNMENT EXHIBIT
Expert 0



# Local Union No. 3
## International Brotherhood of Electrical Workers
### OF GREATER NEW YORK AND VICINITY

**OFFICES AND HEADQUARTERS**
158-11 Harry Van Arsdale Jr. Avenue, Flushing NY 11365
Phone 718-591-4000 • Fax 718-380-8998

200 Bloomingdale Road, White Plains NY 10605
Phone 914-948-3800 • Fax 914-948-1843

AFFILIATED WITH AFL-CIO

NEW YORK CITY
CENTRAL LABOR COUNCIL
AFL-CIO

BUILDING & CONSTRUCTION
TRADES COUNCIL
OF GREATER NEW YORK
AFL-CIO

AND ALL STATE AND
CENTRAL BODIES

January 16, 2008

United Electrical Contractors Association/
United Construction Contractors Association
926 Lincoln Ave.
Holbrook, N.Y

Dear Sirs:                                    Re: Information Request

In anticipation of the commencement of negotiations, Local Union #3 IBEW requests the following information from all the employer members of the UECA and any former employer members that have caused their own expulsion from UECA:

1. A list of all the current and former employees from January 1, 2006 to present, including those on temporary lay-off including their names, last known addresses, telephone numbers, job classification, rates of pay, and dates of hire.

2. A copy of all remittance/contribution reports from January 1, 2006 detailing contributions to any fringe benefits funds. Including but not limited to the Local 363 IBT Pension Fund, Building Trades Annuity, Education and Welfare Funds.

3. A copy of all fringe benefit plans from January 1, 2006 including but not limited to pension, profit sharing, defined contribution plans, vacation, health and welfare, annuity, education or any other plans which relate to the employees that are either individually company sponsored or multi-employer or multiple-employer plans.

Please forward all information to my attention directly at the above address.

Very truly yours,


Vincent McElroen
Financial Secretary


Cc: S.Goodman, Jackson, Lewis LLP
    Expert Elec
    J. Frank, Epstein, Becker and Green P.C.
VMC:vmc
(ueca information request 011508)



# Local Union No. 3
## International Brotherhood of Electrical Workers
### OF GREATER NEW YORK AND VICINITY

**OFFICES AND HEADQUARTERS**
158-11 Harry Van Arsdale Jr. Avenue, Flushing NY 11365
Phone 718-591-4000 • Fax 718-380-8998

200 Bloomingdale Road, White Plains NY 10605
Phone 914-948-3800 • Fax 914-948-1843

AFFILIATED WITH AFL-CIO

NEW YORK CITY
CENTRAL LABOR COUNCIL
AFL-CIO

BUILDING & CONSTRUCTION
TRADES COUNCIL
OF GREATER NEW YORK
AFL-CIO

AND ALL STATE AND
CENTRAL BODIES

March 3, 2008

**By Registered and Regular Mail**

United Electrical Contractors Association/
United Construction Contractors Association
926 Lincoln Ave.
Holbrook, N.Y. 11741

Dear Sirs:

As Per the May 15, 2006 Orders issued by the NLRB in 347 NLRB Nos. 1 & 2, as enforced by judgments of the Court of Appeals for the D.C. Circuit, Nos. 06-1198 & 06-1180 Local 3 is requesting your formal recognition as the exclusive certified collective bargaining representative of the employees of the employer members of the UECA.

Local Union #3 IBEW is also requesting the resumption of bargaining on behalf of the individual employer-members of UECA and of any former employer-members that have caused their own expulsion from UECA, as the exclusive representative of the employees in the following appropriate bargaining unit:

> All electricians, electrical maintenance mechanics, helpers, apprentices and trainees employed in the electrical field employed by the employer-members of United Electrical Contractors Association a/k/a United Construction Contractors Association, but excluding all office clerical employees, guards and supervisors as defined in the Act.

Local 3 is available to negotiate on the following days: March 11, 18, 25 & 31, 2008. In past negotiating sessions the session alternated between a location provided by the UECA and Local 3. In accordance with this past practice, we suggest that it be resumed. Please contact me regarding the time, place and date available to negotiate.

I am also renewing my information request of January 16, 2008 (see attached).

Sincerely yours,

Vincent McElroen
Financial Secretary

Cc: Expert Elect.
    S. Goodman, Jackson & Lewis
    J. Frank, Epstein, Becker and Green P.C.
(ueca req to nego 03032008)

Exhibit G



GOVERNMENT
EXHIBIT





**Local Union No. 3**
**International Brotherhood of Electrical Workers**
OF GREATER NEW YORK AND VICINITY

OFFICES AND HEADQUARTERS
158-11 Harry Van Arsdale Jr. Avenue, Flushing NY 11365
Phone 718-591-4000 • Fax 718-380-8998

200 Bloomingdale Road, White Plains NY 10605
Phone 914-948-3800 • Fax 914-948-1843

AFFILIATED WITH AFL-CIO

NEW YORK CITY
CENTRAL LABOR COUNCIL
AFL-CIO

BUILDING & CONSTRUCTION
TRADES COUNCIL
OF GREATER NEW YORK
AFL-CIO

AND ALL STATE AND
CENTRAL BODIES

January 16, 2008

United Electrical Contractors Association/
United Construction Contractors Association
926 Lincoln Ave.
Holbrook, N.Y

Dear Sirs:

Re: Information Request

In anticipation of the commencement of negotiations, Local Union #3 IBEW requests the following information from all the employer members of the UECA and any former employer members that have caused their own expulsion from UECA:

1. A list of all the current and former employees from January 1, 2006 to present, including those on temporary lay-off including their names, last known addresses, telephone numbers, job classification, rates of pay, and dates of hire.

2. A copy of all remittance/contribution reports from January 1, 2006 detailing contributions to any fringe benefits funds. Including but not limited to the Local 363 IBT Pension Fund, Building Trades Annuity, Education and Welfare Funds.

3. A copy of all fringe benefit plans from January 1, 2006 including but not limited to pension, profit sharing, defined contribution plans, vacation, health and welfare, annuity, education or any other plans which relate to the employees that are either individually company sponsored or multi-employer or multiple-employer plans.

Please forward all information to my attention directly at the above address.

Very truly yours,

Vincent McElroen
Financial Secretary

Cc: S.Goodman, Jackson, Lewis LLP
    Expert Elec
    J. Frank, Epstein, Becker and Green P.C.
VMC:vmc
(ueca information request 011508)



# Local Union No. (
## International Brotherhood of Electrical Workers
### OF GREATER NEW YORK AND VICINITY

**OFFICES AND HEADQUARTERS**
158-11 Harry Van Arsdale Jr. Avenue, Flushing NY 11365
Phone 718-591-4000 • Fax 718-380-8998

200 Bloomingdale Road, White Plains NY 10605
Phone 914-948-3800 • Fax 914-948-1843

AFFILIATED WITH AFL CIO

NEW YORK CITY
CENTRAL LABOR COUNCIL
AFL-CIO

BUILDING & CONSTRUCTION
TRADES COUNCIL
OF GREATER NEW YORK
AFL-CIO

AND ALL STATE AND
CENTRAL BODIES

January 16, 2008

**By Registered and Regular Mail**

United Electrical Contractors Association/
United Construction Contractors Association
926 Lincoln Ave.
Holbrook, N.Y. 11741

Dear Sirs:

As Per the May 15, 2006 Orders issued by the NLRB in 347 NLRB Nos. 1 & 2, as enforced by judgments of the Court of Appeals for the D.C. Circuit, Nos. 06-1198 & 06-1180 Local 3 is requesting your formal recognition as the exclusive certified collective bargaining representative of the employees of the employer members of the UECA.

Local Union #3 IBEW is also requesting the resumption of bargaining on behalf of the individual employer-members of UECA and of any former employer-members that have caused their own expulsion from UECA, as the exclusive representative of the employees in the following appropriate bargaining unit:

> All electricians, electrical maintenance mechanics, helpers, apprentices and trainees employed in the electrical field employed by the employer-members of United Electrical Contractors Association a/k/a United Construction Contractors Association, but excluding all office clerical employees, guards and supervisors as defined in the Act.

Local 3 is available to negotiate on the following days: January 30, 31 and February 2 and 15, 2008

In past negotiating sessions the session alternated between a location provided by the UECA and Local 3. In accordance with this past practice, we suggest that it be resumed. Please contact me regarding the time, place and date available to negotiate.

Sincerely yours,

Vincent McElroen
Financial Secretary

Cc: Expert Elect.
S. Goodman, Jackson & Lewis
J. Frank, Epstein, Becker and Green P.C.
(ueca req to nego 011608)

GOVERNMENT EXHIBIT

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

NATIONAL LABOR RELATIONS BOARD,       :
                                      :
        **Applicant,**                :
                                      :
        **v.**                       :       **No.**
                                      :
EXPERT ELECTRIC, INC.                 :
                                      :
        **Respondent.**              :

**MEMORANDUM IN SUPPORT OF APPLICATION OF THE NATIONAL LABOR**
**RELATIONS BOARD FOR A SUMMARY ORDER REQUIRING OBEDIENCE WITH**
**INVESTIGATIVE SUBPOENA**

The National Labor Relations Board (the "Board"), an administrative agency of

the United States Government, having made an application for an order requiring

obedience with a subpoena served on Respondent Expert Electric, Inc. ("Respondent"

or "Expert"), submits this memorandum in support of that application.

**A.**    **This Court has Subject Matter Jurisdiction to Grant the Board's Application**
       **for Subpoena Enforcement**

Section 11(1) of the Act, 29 U.S.C. §161(1), grants statutory authority to the

Board for the exercise of subpoena power. That section states, in part:

> The Board, or its duly authorized agents or agencies,
> shall at all reasonable times have access to, for the
> purpose of examination, and the right to copy any
> evidence of any person being investigated or
> proceeded against that relates to any matter under
> investigation or in question. The Board, or any
> member thereof, shall upon application of any party to
> such proceedings, forthwith issue to such party
> subpoenas requiring the attendance and testimony of
> witnesses or the production of any evidence in such
> proceeding or investigation requested in such
> application.

*See Perdue Farms, Inc., Cookin' Good Div. v NLRB*, 144 F.3d 830, 834 (D.C. Cir. 1998); *NLRB v. Carolina Food Processors*, 81 F.3d 507, 511 (4th Cir. 1996); *NLRB v. Alaska Pulp Corp.*, 149 LRRM 2684, 2687 (D.D.C. 1995).

The United States district courts receive their power to order enforcement of subpoenas by the Board by virtue of Section 11(2) of the Act (29 U.S.C. §161(2)). That section states, in part:

> In case of contumacy or refusal to obey a subpoena issued to any person, any United States district court . . . within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question . . . .

*See NLRB v. U.S. Postal Service*, 790 F.Supp. 31, 33 (D.D.C. 1992).

In the instant case, the Board is investigating whether the United Electrical Contractors Association ("UECA"), a multi-employer electrical contractors association, and Respondent unlawfully violated the terms of two judgments of the United States Court of Appeals for the District of Columbia, dated November 27, 2007, by failing to provide relevant and necessary information to Local 3, IBEW, AFL-CIO ("the Union") as required by the judgments, including a list of all current and former employees and information relating to fringe benefit plans and contributions from some of UECA's current and former employer-members.[1]  Because Respondent has an office and

---

[1] Should the investigation reveal that UECA's actions constitute a refusal to bargain with the Union, UECA may also have violated the terms of a judgment of the United States Court of Appeals for the Second Circuit, dated September 2, 1994 (unreported Judgment, Case Nos. 93-4269 and 94-4011).

2

transacts business within this judicial district and the subpoena was served on Respondent at those offices, this Court clearly has jurisdiction under Section 11(2) of the Act to order its compliance with the subpoena.

## B. The Board's Application Procedure for Subpoena Enforcement is Appropriate.

The Board's subpoena enforcement proceedings, authorized by Section 11(2) of the Act, are summary in nature. *See NLRB v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992); *North American Van Lines, Inc.*, 611 F. Supp. 760, 763 (N.D.Ind. 1985) (citing *NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 113 (5th Cir. 1982)); *NLRB v. Frederick Cowan and Co., Inc.*, 522 F.2d 26, 28 (2d Cir. 1975). Section 11(2) specifically authorizes the Board to make an "application" to the district courts for a summary disposition, on the sole issue of whether or not to enforce the Board subpoenas.

It is well established that in a Section 11(2) enforcement case, the district court should treat the Board's application as a dispositive matter, and not as a pre-trial discovery matter. *Frazier*, 966 F.2d at 817-818. For, as one court recognized, "otherwise, the enforcement proceedings may become a means for thwarting the expeditious discharge of the agency's responsibilities." *See NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3d Cir. 1970). "[T]he question of whether or not to enforce the subpoena is the only matter before the court. The court's decision seals with finality the district court proceeding and is subject to appellate review." *Frazier*, 966 F.2d at 818. Indeed, the limited nature of this jurisdictional grant to the district court contained in Section 11(2) is a consequence of Congress' recognition of the importance of providing the Board with a means of prompt enforcement of its subpoenas so that it can effectively carry out its statutory mission.

3

Consistent with the authorization contained in Section 11(2) of the Act and the need to avoid unnecessary delay of the Board's processes, the Board's practice has long been to file an application with the district court to enforce the Board's subpoenas. *See NLRB v. U.S. Postal Service*, 790 F.Supp. at 32. Section 11(2) specifically provides that a subpoena enforcement proceeding is commenced by an application, not by complaint or motion and notice of motion. As explained long ago by the Sixth Circuit in *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450 (6th Cir. 1941), in a case challenging the Board's failure to serve a summons and complaint in a subpoena enforcement proceeding:

> [T]he proceedings plainly are of a summary nature not requiring the issuance of process, hearing, findings of fact, and the elaborate process of a civil suit. We think the procedure to be followed in the district court is controlled by Section 11(2) of the Act . . . .
> It is significant that the statute calls for an "application" rather than a petition, an "order" rather than a judgment, and that it details no other procedural steps. Obviously, if the enforcement of valid subpoenas, the issuance of which is a mere incidence in a case, were to require all of the formalities of a civil suit, the administrative work of the Board might often be subject to great delay. We think that such was not the intention of Congress.

*Id.* at 451; *See also Interstate Dress Carriers*, 610 F.2d at 112; *U.S. v. Vivian*, 224 F.2d 53, 57 (7th Cir. 1955).

Thus, the Board's application procedure for seeking enforcement of the subpoena issued to Respondent in the instant case is appropriate.

**C.** **This Court Should Grant the Board's Application for Subpoena Enforcement Because, Absent a Legitimate Claim of Privilege, the Subpoena Seeks Relevant Information.**

1. The Legal Standards Governing Issuance of Administrative Subpoenas

Through Section 11 of the National Labor Relations Act (the Act), Congress vested in the Board and its agents broad investigatory authority, including the power to subpoena any evidence "that relates to any matter under investigation or in question." 29 U.S.C. § 161(1); *NLRB v. Alaska Pulp Corp.*, 149 LRRM at 2687. *See also NLRB v. Interstate Material Corp.*, 930 F.2d 4, 6 (7th Cir. 1991) (describing the Board's broad § 11 powers); *NLRB v. Carolina Food Processors, Inc.*, 81 F.3d at 511 (same); *NLRB v. Steinerfilm, Inc.*, 702 F.2d 14, 15 (1st Cir. 1983) (same); *NLRB v. G.H.R. Energy Corp.*, 707 F.2d at 114 (same); *NLRB v. Dutch Boy, Inc.*, 606 F.2d 929, 932 (10th Cir. 1979). This broad subpoena power enables the Board "to get information from those who best can give it and who are most interested in not doing so." *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950). Thus, such subpoenas may be directed to any person having information relevant to an investigation. *See, e.g., Link v. NLRB*, 330 F.2d 437, 440 (4th Cir. 1964); *NLRB v. Alaska Pulp Corp.*, 149 LRRM at 2689.

The scope of the Board's investigative power is broad: "The Board, with power akin to that of a grand jury, 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *NLRB v. Alaska Pulp Corp.*, 149 LRRM at 2688 (quoting *United States v. Morton Salt Co.*, 338 U.S. at 642-43). *See also Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board*, 878 F.2d 875, 882 (5th Cir. 1989) ("For purposes of an administrative subpoena, the notion of relevancy is a broad one. . . .") (citation omitted), and cases cited therein;

*NLRB v. Carolina Food Processors, Inc.,* 81 F.3d at 511.   The courts have, in fact, interpreted Section 11 to permit the Board to obtain "everything it [could] seek[ ] from an order compelling discovery" under the Federal Rules of Civil Procedure.   *NLRB v. Interstate Material Corp.,* 930 F.2d at 4, 6.

Moreover, courts have explicitly approved the Board's use of administrative subpoenas to investigate whether parties are in contempt of its court-enforced orders. *NLRB v. Interstate Material Corp.,* 930 F.2d at 6; *NLRB v. Steinerfilm, Inc.,* 702 F.2d at 15.

## 2. The Standard of Judicial Review

Subpoenas from the Board are subject to limited judicial review.   A district court will enforce a Board subpoena if the investigation is legitimate, the subpoena is not overly broad, and the records or testimony sought are relevant to the inquiry.   *See U.S. Postal Service,* 790 F.Supp. at 34 (citing *United States v. Morton Salt Co.,* 338 U.S. at 652); *NLRB v. North Bay Plumbing,* 102 F.3d 1005, 1007 (9th Cir. 1996*); Frazier,* 966 F.2d at 815; *NLRB v. Williams,* 396 F.2d 247, 249 (7th Cir. 1968).

The burden on a party seeking to evade compliance with a subpoena is not a meager one.   The party must show that the subpoena serves purposes outside the realm of authority of the issuing agency.   If this threshold is not reached, the court should enforce the subpoena.   *Frazier,* 966 F. 2d at 818.

## 3. The Information Sought through the Subpoena is Relevant to the Board's Legitimate Investigation of UECA and Expert

The information sought by the subpoena is relevant to the issues under investigation.   As discussed earlier, the Board is investigating whether UECA and Expert have complied with provisions of the DC Circuit's judgments requiring, among

6

other things, that they produce certain information to the Union and whether UECA has utilized all its powers to ensure its employer-members' cooperation in this endeavor. The Board's subpoena specifically seeks testimony which would evidence communications regarding the Union's information requests and Expert's efforts to comply therewith. Accordingly, the subpoena seeks information directly relevant to whether UECA and Expert complied with these provisions of the DC Circuit's judgments and, possibly, whether UECA complied with the terms of the Second Circuit's earlier judgment; the efforts taken to comply with the provisions; and, if not, the reason or reasons for such noncompliance.

**D.   The Respondent Has Raised No Legitimate Attorney-Client Privilege Objection to Furnishing the Information Sought by the Board**

Respondent has no legitimate objection to furnishing the information sought by the Board because under established Second Circuit law, the attorney-client privilege does not apply to the communications in question.

Attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (citations omitted). To invoke attorney-client privilege, a party must demonstrate that there was: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)). This Court has construed the privilege "narrowly because it renders relevant information undiscoverable." *In re County of Erie*, 473 F.3d at 418.

7

Finally, the burden of establishing the applicability of the attorney-client privilege rests with the party invoking it. *In re County of Erie,* 473 F.3d at 418, and cases cited therein.

In the case at hand, Expert's assertions of attorney-client privilege at the deposition do not meet elements (2) and (3) of the 2nd Circuit's test. First, the communications in question do not meet element (2) of the test because the communications originated from third parties and were not "in fact" kept confidential. As the 2nd Circuit stated in Colton v. U.S., "statements, correspondences, and documents received from third parties are not protected by the attorney-client privilege..." 306 F.2d 633, 639 ($2^d$ Cir. 1962) (citing *Hickman v. Taylor,* 329 U.S. 495, 508 (1947)). Given this rule, the statements, correspondences, and documents received from third parties should not be protected by attorney-client privilege solely because they were transmitted by an attorney to his client. As the Supreme Court noted in *Upjohn Co. v. U.S.,* "a party cannot conceal a fact merely by revealing it to his lawyer." 449 U.S. 383, 396 (citations omitted). Thus, Expert should not be permitted to conceal underlying factual information simply because its lawyer received the communications and transmitted them to the client.

Furthermore, Expert has not and cannot meet element (3) of the 2nd Circuit's test for attorney-client privilege. Element (3) requires that privileged communications between attorney and client be made for the purpose of obtaining legal advice. Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. *In re County of Erie*, 473 F.3d at 419 (citations omitted). It requires a lawyer to rely on legal education and experience to inform judgment. *Ball v. U.S. Fid. & Guar. Co.*, No. M8-85, 1989 WL

8

135903, at *1 (S.D.N.Y. 1989) (reasoning that legal advice "involve[s] the judgment of a lawyer in his capacity as a lawyer"). When evaluating this element, the 2nd Circuit considers "whether the predominant purpose of the communication is to render or solicit legal advice." *In re County of Erie*, 473 F.3d at 420 (citations omitted).

In the instant case, Expert did not assert the privilege in instances where the "predominant purpose" of the communication was to render or solicit legal advice. For example, the deposition transcript reflects the following exchange between Board Attorney Helene Lerner and Expert Attorney James S. Frank during the deposition of John Micelotta:

> **BY MS. LERNER:**
>
> **Q**: *Do you recall receiving a copy of either Expert Nine[2] or Expert 10[3] in early 2008?*
>
> **MR. FRANK**: *Objection to the extent you're asking for communications between him and his attorney.*
>
> **MS. LERNER**: *The letters on their face state that they were cc'd to Expert Electric.*

---

[2] Expert Exhibit Nine [Board's Application, Exhibit F] is a letter dated March 3, 2008, from the Union to Expert's counsel, requesting formal recognition of the Union as the exclusive bargaining representative of the employees of UECA's employer members, requesting the resumption of collective bargaining, and enclosing a copy of its January 16, 2008, information request to UECA. The letter indicates that that Expert was carbon copied.

[3] Expert Exhibit 10 [Board's Application, Exhibit G] is a letter dated March 3, 2008, from the Union to UECA requesting formal recognition of the Union as the exclusive bargaining representative of the employees of UECA's employer members, requesting resumption of collective bargaining, and enclosing a copy of its January 16, 2008, information request to UECA. The letter indicates that Expert and James Frank, Esq. (Expert's counsel) were carbon copied.

9

**BY MS. LERNER:**

> **Q**: *My question is do you recall receiving a copy of either Expert Nine of [sic] 10 in early 2008?*
>
> **MR. FRANK**: *And are you excluding whether he received it from counsel - -*
>
> **MS. LERNER**: *That's just my question.*
>
> **MR. FRANK**: *Then we object to the question. We object to the question on the grounds you're asking for communications between him and his attorney. You may ask the question if he independently received a non-attorney/client - -*

[Board's Application, Exhibit C, pp. 41-44].

As evidenced by the dialogue above, the Board asked Mr. Micelotta a straightforward question about his knowledge of the Union's letters requesting recognition, information, and bargaining. Instead of providing a candid answer, Expert's Counsel asserted attorney-client privilege as if discussion of the Union's letters constituted legal advice. Conveying the underlying facts of a Board investigation to a client does not constitute "legal advice," and it is not protected by attorney-client privilege. As the United States Supreme Court explained in *Upjohn Co. v. United States*:

> The protection of the [attorney-client] privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be

10

> compelled to answer the question, 'What did you say
> or write to the attorney?' but may not refuse to
> disclose any relevant fact within his knowledge merely
> because he incorporated a statement of such fact into
> his communication to his attorney.

449 U.S. 383, 395-396 (1981) (citing, *Philadelphia v. Westinghouse Electric Corp.*, 205

F.Supp. 830, 831 (E.D. Pa. 1962)).

Here, Mr. Micelotta and Expert's counsel attempted to conceal relevant factual

information solely on the basis that some of that information may have been contained

in communications with counsel. The United States Supreme Court has noted that "a

party cannot conceal a fact merely by revealing it to his lawyer." *Upjohn*, 449 U.S. at

396 (citations omitted). As is evidenced by the dialogue above, Expert's counsel was

attempting to do just that. Because Mr. Micelotta's knowledge of the Board's

investigation is an underlying fact pertinent to the Board's contempt investigation,

because relaying underlying facts to a client does not constitute "legal advice," and

because the Supreme Court has explicitly stated that underlying facts are not protected

by attorney-client privilege, Expert has not met the 2nd Circuit's test for attorney-client

privilege. Therefore, this Honorable Court should issue an order requiring Expert to

comply with the Board's subpoena.

E.    **The Board Is Entitled To Reimbursement for the Costs Incurred in Initiating
      and Prosecuting This Subpoena Enforcement Action.**

Respondent has interposed no legitimate objections to obedience with the

subpoena. Under these circumstances, the Board is entitled to an award of cost and

attorneys' fees incurred in initiating and prosecuting this subpoena enforcement action.

*See Cable Car Advertisers*, 319 F.Supp.2d 991, 999-01 (N.D.Cal. 2004); *Coughlin*, 176

LRRM at 3202; *NLRB v. A.G.F. Sports, Ltd.,* 146 LRRM 3022, 3024 (E.D.N.Y. 1994);

11

*Baywatch Security and Investigations*, 2005 WL 1155109, at \*3.  Moreover, during the deposition of John Micelotta, Board Attorney Helene Lerner repeatedly warned Expert that she would seek costs and attorneys fees if Mr. Micelotta refused to answer her questions.  In one instance, the deposition transcript reflects the following dialogue:

> **MS. LERNER**:  *Okay. I'm going to tell you if I have to go to court and get these answers and get the subpoena enforced in court so that I can get answers to certain questions that Mr. Frank is instructing you not to answer because I don't think there is a privilege.*
>
> *I'm just stating this on the record, I'm going to seek attorney fees and costs in my having to come back, in my preparing my application to enforce the subpoena, and if I have to come back and get these questions answered, I'm going to ask for costs and attorney fees.  I just want you to understand that, okay. I'm not asking for anything that he might have said to you.*
>
> *I'm just asking if you received a letter in the mail that concerned your company and the Labor Board or the Union whether or not you received a copy of that letter from* [Mr. Frank], *okay.*

12

> **MR. FRANK**:    *You're asking for communications*
> *between an attorney and client.*

[Board's Application, Exhibit C, pp. 12-13].

In another instance, the deposition transcript reflects the following dialogue:

> **MS. LERNER**:    *He answered based on, well, my*
> *question is, and if you're instructing him not to answer*
> *that question, my question is is he aware that my*
> *office is investigating whether or not his company is*
> *complying or has complied with the D.C. Circuit*
> *Court's judgement?  And I understand your objection,*
> <u>*again I have to state for the record if I have to file an*</u>
> <u>*application to enforce the subpoena to get these*</u>
> <u>*questions answered, I'm going to seek costs and*</u>
> <u>*attorneys fees in doing so.*</u>

[Board's Application, Exhibit C, p. 20 (emphasis added)].

Under these (forced) circumstances and given the repeated warnings from Board
Attorney Helene Lerner, this Honorable Court should award the Board costs and
attorneys' fees, at the prevailing market rate, for expenses incurred in initiating and
prosecuting this subpoena enforcement action.

**CONCLUSION**

For the reasons set forth above, the Board respectfully requests that this Court
enter an order requiring Respondent Expert Electric, Inc.'s full compliance with
Subpoena #A-851506 and requiring Respondent to reimburse the Board for the costs

13

and attorneys' fees incurred in initiating and prosecuting this subpoena enforcement action. A proposed order is enclosed.

**NATIONAL LABOR RELATIONS BOARD**

HELENE LERNER, Trial Attorney
(202) 273-3738
Helene.Lerner@nlrb.gov
Bar Code HL1835

STANLEY R. ZIRKIN, Assistant General Counsel
(202) 273-3739
Stanley.Zirkin@nlrb.gov

POLLY MISRA, Trial Attorney
(202) 273-3744
Polly.Misra@nlrb.gov

Contempt Litigation and Compliance Branch
1099 14th Street, N.W., Suite 10700
Washington, D.C.  20570
Tel:   (202) 273-3740
Fax:  (202) 273-4244

DATED at Washington, D.C.
this 17th day of September, 2010

UECA subpoena memo

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

NATIONAL LABOR RELATIONS BOARD,               :
                                              :
              Applicant,                      :
                                              :
        v.                                    :        No.
                                              :
EXPERT ELECTRIC, INC.                         :
                                              :
              Respondent.                     :

## ORDER

Upon consideration of the Application of the National Labor Relations

Board's (the "Board") for Summary Order Requiring Obedience with Investigative

Subpoena ("Application"), and good cause appearing therefor, it is hereby

**ORDERED** that the Board's Application is **GRANTED;** and it is

**ORDERED** that Respondent Expert Electric, Inc. shall appear for the

continuation and completion of its deposition pursuant to Subpoena #A-851506,

at a date, time and place designated by the Board; and it is

**ORDERED** that Respondent Expert Electric, Inc. shall answer fully and

candidly all questions identified in the Board's Application, appropriate follow-up

questions, and all questions relating to Expert Electric, Inc.'s compliance with

D.C. Circuit Judgment Nos. 06-1180 and 06-1198; and it is

**ORDERED** that Respondent Expert Electric, Inc. shall reimburse the

Board for the costs and attorneys fees (calculated at the prevailing market rate in

Washington, D.C.) incurred in initiating and prosecuting this subpoena

enforcement action; and in traveling back to Brooklyn, New York, to continue and

complete its investigatory deposition of Expert Electric, Inc.

Dated: this _____ day of _____, 2010

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Helene D. Lerner, Attorney
National Labor Relations Board
Contempt Litigation and Compliance Branch
1099 14th Street, N.W., Suite 10700
Washington, D.C. 20570

Donald S. Krueger, Esq.
James S. Frank, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

[expert proposed order priv]

2

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

NATIONAL LABOR RELATIONS BOARD,          :
                                    :
                  Applicant,          :
                                    :
                  vi.          :          No.
                                    :
EXPERT ELECTRIC, INC.          :
                                    :
                  Respondent.          :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that one copy each, of the foregoing Application

of the National Labor Relations Board for Summary Order Requiring Obedience with

Investigative Subpoena, Memorandum in Support and Proposed Order, has this day

been served by regular mail and by electronic mail upon the following at the respective

addresses listed below:

         Donald S. Krueger, Esq.
         James S. Frank, Esq.
         Epstein Becker & Green, P.C.
         250 Park Avenue
         New York, NY   10177

         dkrueger@ebglaw.com
         jfrank@ebglaw.com

         HELENE D. LERNER
         Trial Attorney
         Contempt Litigation & Compliance Branch

Dated at Washington, DC
this 17th day of September, 2010